**James Ray WOOLRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 158–91.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 26, 1992.

Rehearing Denied April 15, 1992.

---

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Charles M. Mallin, Gregg Miller, Christian Harrison, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant was convicted of murder and punishment was assessed by the jury at confinement for life. Tex. Penal Code Ann. § 12.42(d). The Court of Appeals affirmed. *Woolridge v. State*, No. 2–90–015–CR (Tex. App.—Fort Worth 1990) (Not published). We granted appellant's petition for discretionary review wherein appellant contends: The Court of Appeals erred in holding that it is improper for defense counsel to voir dire prospective jurors on their definitions of "reasonable doubt." We will reverse the judgment of the Court of Appeals.

### I.

A brief recitation of the pertinent events at trial is necessary to fully address the issue presented. After a few introductory remarks from the trial judge, the State began its voir dire examination. During that examination the State made the following statements:

Now, as he [trial judge] told you, this is a criminal case and what that means to you—excuse me—what that means to you is, the State has the burden of proof beyond a reasonable doubt. We have to prove each element of our case beyond a reasonable doubt. And our law has never had a state court case that says beyond a reasonable doubt means one thing or another.

The fact is we don't know what it means, but the jurors in this case would be called to decide whether or not they were convinced beyond a reasonable doubt that a crime was, in fact, committed. Now, the term "beyond a reasonable doubt," I won't tell you what it means. *I can tell you what it doesn't mean.*[1]

I'm sure a lot of you on TV have watched shows where they say, "I am convinced beyond a shadow of a doubt." That is not the standard that we apply in Texas in a criminal case. It's beyond a reasonable doubt. And while I won't tell you what it means, I will tell you what it doesn't mean.

*Beyond a reasonable doubt does not mean beyond all doubt.* The only way anybody on the jury could ever be convinced of a crime beyond all doubt is if you were a witness to it. And if you wee a witness to it, then you couldn't serve on the jury.

So, I guess the first thing that I am concerned is, *is there anybody on the first row that would require [co-counsel] and myself to prove our case beyond all doubt?*

\* \* \* \* \* \*

You heard me talk to you earlier about the State having the burden of proving

---

**1.** Unless otherwise indicated, all emphasis herein is supplied by the author.

each element of this case beyond a reasonable doubt. What are the elements? The elements are the things that we have to prove. As the Judge told you, we have alleged in an indictment that on or about the 11th day of February of 1988, that a defendant did then and there intentionally and knowingly cause the death of [complainant] by shooting [complainant] with a deadly weapon to-wit: A firearm.

And if [co-counsel] and myself prove that to your satisfaction beyond a reasonable doubt, under our law, you would be entitled or we would be entitled to a verdict of guilty of murder.

On the other hand, if we failed to prove that to your satisfaction beyond a reasonable doubt, then this Defendant or any defendant in a criminal case would be entitled to a verdict of not guilty. That is the law.

We have also alleged it a second way; that on or about the 11th day of February, 1988, that the Defendant did then and there intentionally with the intent to cause serious bodily injury to [complainant], commit an act clearly dangerous to human life; namely: Shoot the said [complainant] with a deadly weapon to-wit: A firearm which caused the death of [complainant].

If we prove that to your satisfaction beyond a reasonable doubt, under Texas law, we would be entitled to a verdict of guilty of murder. There's (sic) two ways it can be done. We would be entitled to a verdict of guilty of murder as charged. If we left out one element of the things that I read to you, the Defendant or a defendant in a criminal case would be entitled to a verdict of not guilty.

Is there anybody on the panel who couldn't follow the law? In other words, if you were *convinced,* you would be obligated to return a verdict of guilty of murder. If you weren't *convinced,* you would be obligated to say not guilty. Anybody who couldn't follow those simple principles? Okay.

During appellant's voir dire examination the following colloquy occurred:

... I would like to visit with you just a moment about the concept of reasonable doubt. Now, we talked—I didn't talk to you individually, I talked to the people on the first row about the deciding facts and what you look for when you decide what you believe and what you don't believe, what is true, what is not true. Look at the source, look at whether the story is believable to begin with. You look at other things that might corroborate the story. You look at your life experiences.

Well, in the American criminal justice system, jurors are not only called upon to decide the facts. But they are called upon to decide whether those facts are true beyond a reasonable doubt. And that's really the difference between the juror's role in a criminal case over here in the criminal courthouse and in the civil case over at the civil courthouse.

I'm sorry, are you one of the people that has served on a civil jury before?

JUROR: Yes, I have.

[DEFENSE COUNSEL]: And you remember that the burden of proof—did you say it was breach of contract?

JUROR: No.

[DEFENSE COUNSEL]: Okay. What kind of case was it?

JUROR: It was a—to determine where a couple were married by common law.

[DEFENSE COUNSEL]: Okay. A domestic relations case. Do you remember the burden of proof being by a preponderance of the evidence?

JUROR: I don't remember too much about the case, it has been so long.

[DEFENSE COUNSEL]: Well, generally over in the civil courts, they argue about important things. They fight over important things, and I'm sure this was an important case. It certainly was to the individuals involved. They fight over millions of dollars sometimes, they fight

over custody of young children. They fight over dividing up the property of a marriage in a divorce.

By and large, juries over there are called upon to decide facts the same way juries over here are called upon to decide facts. The difference is: Once the jury has decided the facts over there, the burden of proof is by a preponderance of the evidence, which just means a shade more evidence on one side than the other. Is that starting to sound familiar?

JUROR: Yes.

[DEFENSE COUNSEL]: However, over here, when an individual's status and an individual's freedom is at stake, the burden is much, much higher. Juries still decide the facts just like they decide facts over in the civil courts, but the burden is beyond a reasonable doubt. I guess my question to you is: Do you think that's the way it should be?

JUROR: Yes, sir.

[DEFENSE COUNSEL]: Okay. Thank you, sir.

[NEXT JUROR]: same question, do you think that maybe, maybe we've got our priorities all wrong, maybe the burden of proof should be higher than we're talking about, hundreds of thousands, maybe millions of dollars, than we're making decisions regarding an individual's life?

JUROR: No, I think the priorities are right where they set.

[DEFENSE COUNSEL]: *May I ask you what beyond a reasonable doubt means to you?*

[PROSECUTOR]: Excuse me, Judge, I am going to object.

THE COURT: I will sustain the objection, Counsel.

[DEFENSE COUNSEL]: Let me ask you this: The prosecutor was absolutely correct when he said over here in the state courts, the Judge will not define beyond a reasonable doubt. It means whatever it means to you individually.

I can tell you that it's the highest burden of proof in the American justice system. I can tell you it's a much, much higher burden of proof than they use across the street at the civil courthouse when they decide custody of young children, when they're talking about things, objects, money, that sort of thing.

Over at the federal courthouse, the judges—Judge, this is just by way of example.

THE COURT: I'll wait and see what you say.

[DEFENSE COUNSEL]: Sir?

THE COURT: I will wait and see what you are going to say.

[DEFENSE COUNSEL]: The federal judges over in the federal courthouse do give a definition of reasonable doubt, and it's something like this: That degree of certainty which you would rely on without hesitation in making the most important decisions in your own personal affairs.

*Is that close to what you believe beyond a reasonable doubt means?*

[PROSECUTOR]: I would object, he's trying to get her to commit.

THE COURT: I will sustain the objection. That is not proper.

You don't have to answer.

[DEFENSE COUNSEL]: Okay. Note my exception.

THE COURT: Okay.

The charge to the jury at the guilt/innocence phase contained the following:

In all criminal cases, the burden of proof is upon the State. The defendant is presumed to be innocent until and unless his guilt is established by legal and competent evidence *beyond a reasonable doubt*, and in case you have a *reasonable doubt* as to the defendant's guilt, you will acquit him and say by your verdict Not Guilty.

\*     \*     \*     \*     \*     \*

All persons are presumed to be innocent and no person may be convicted of

an offense unless each element of the offense is proved *beyond a reasonable doubt....*

On direct appeal, appellant contended the trial judge erred by prohibiting him from questioning the venire on the State's burden of proof, thereby denying appellant the intelligent exercise of his peremptory strikes. The Court of Appeals, relying upon *Battie v. State*, 551 S.W.2d 401 (Tex.Cr.App.1977), overruled appellant's point of error and held the trial judge did not abuse its discretion by refusing to allow appellant to examine the venire on the meaning of reasonable doubt.

## II.

In *Nunfio v. State*, 808 S.W.2d 482 (Tex. Cr.App.1991), we held:

> The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. *See Smith v. State*, 703 S.W.2d 641 (Tex.Cr.App.1985), and cases cited therein; *see also, Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App. 1974). The propriety of the question which the defendant sought to ask is determinative of the issue. *Smith*, 703 S.W.2d at 643. We have held that a question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* at 643, *citing Powell v. State*, 631 S.W.2d 169 (Tex.Cr.App.1982).

*Nunfio*, 808 S.W.2d at 484.

We have found restrictions of a defendant's voir dire to be improper in many situations. *Nunfio*, 808 S.W.2d at 482 (whether the victim being a nun might affect the jury); *Shipley v. State*, 790 S.W.2d 604 (Tex.Cr.App.1990) (feelings about extra-marital affairs); *Robinson v. State*, 720 S.W.2d 808 (Tex.Cr.App.1986) (bias against defendants who invoked an insanity defense); *Ratliff v. State*, 690 S.W.2d 597 (Tex.Cr.App.1985) (time limitation was not reasonable); *Smith v. State*, 703 S.W.2d 641 (Tex.Cr.App.1985) (what the veniremen had read about the insanity defense and

what pretrial publicity the veniremen had seen); *Campbell v. State*, 685 S.W.2d 23 (Tex.Cr.App.1985) (the purpose of punishment); *Powell v. State*, 631 S.W.2d 169 (Tex.Cr.App.1982) (the purpose of punishment).

By the same token, we have upheld some restrictions on voir dire. *Boyd v. State*, 811 S.W.2d 105 (Tex.Cr.App.1991) (a reasonable time limitation, and what is the prospective capital juror's understanding of a life sentence or of parole); *Spence v. State*, 795 S.W.2d 743 (Tex.Cr.App.1990) (whether panel members could follow an instruction on circumstantial evidence); *Guerra v. State*, 771 S.W.2d 453 (Tex.Cr. App.1988) (a reasonable time limitation, and the credibility of police officers); *Allridge v. State*, 762 S.W.2d 146 (Tex.Cr.App. 1988) (what cases would be appropriate for the death penalty); and *Faulder v. State*, 745 S.W.2d 327 (Tex.Cr.App.1987) (whether members of the venire remembered specific aspects of a newspaper article).

We must determine if a question which addresses the State's burden of proof of beyond a reasonable doubt is a proper question for the purposes of voir dire examination. The State's burden of proof is an issue applicable to any criminal case because the fact-finder must apply that standard when determining guilt. Therefore, both parties have an interest in knowing a potential juror's common understanding of the State's burden of proof in order to determine how the burden will be applied by the jury.

Initially, the State argues we should affirm the Court of Appeals which relied upon *Battie v. State*, 551 S.W.2d 401 (Tex. Cr.App.1977). In *Battie*, then Commissioner Davis stated:

> The Legislature of this State did not see fit to define "criminal acts of violence." Where the Legislature does not define words or phrases, Art. 3.01, supra, provides they are to be "taken and understood in their usual acceptation in common language." In *King* [*v. State*, 553 S.W.2d 105 (Tex.Cr.App.1977)], this

Court found that the term "criminal acts of violence" falls into that category of words "simple in themselves" and "jurors are supposed to know such common meaning and terms." It would be paradoxical for the Legislature and this Court to presume that members of a panel know the meaning of such terms as "reasonable doubt," "criminal acts of violence," "sound memory and discretion" and on the other hand for this Court to hold that a trial court has abused its discretion in not allowing a defendant to inquire of each member of the panel as to his or her understanding of such terms.

*Battie,* 551 S.W.2d at 404.

In *Battie,* the trial judge initially permitted the defendant to question potential jurors with regard to their understanding of the phrase "criminal acts of violence." However, the trial judge later advised the defendant that the line of questioning would no longer be permitted *because of the extended time* involved in questioning the potential jurors. *Id.* at 403. Therefore, the issue in *Battie* was limited to whether the trial judge abused his discretion in denying defendant's request to question prospective jurors about their understanding of the term "criminal acts of violence." *Id.* at 405. Both the State and appellant agree the portion of *Battie* pertaining to "reasonable doubt" is dicta and, therefore, not binding on our decision today.

■ Secondly, the State contends that to allow questioning of each prospective juror on such an undefined term (see fn. 4, infra) would unnecessarily prolong the voir dire process.[2] At first glance, several of our

prior opinions seem to support the State's position that a question of a venire is not proper if it asks a veniremember's concept of a term that will not be defined for the jury. *Battie,* 551 S.W.2d at 405; *Milton v. State,* 599 S.W.2d 824, 826 (Tex.Cr.App. 1980); *Esquivel v. State,* 595 S.W.2d 516, 525 (Tex.Cr.App.1980); and *Chambers v. State,* 568 S.W.2d 313, 323 (Tex.Cr.App. 1978). However, those opinions are distinguishable because they dealt with capital murder prosecutions where the voir dire was conducted on an individual basis. Tex. Code Crim.Proc.Ann. art. 35.17(2).[3] In capital murder cases, because the voir dire examination may take weeks or even months, we have allowed trial judges to limit the voir dire examination when it appeared to be taking an "unreasonable" length of time. *O'Bryan v. State,* 591 S.W.2d 464, 474 (Tex.Cr.App.1979) [Citing *Bodde v. State,* 568 S.W.2d 344 (Tex.Cr. App.1978)].

In *McGowen v. State,* 290 S.W.2d 521 (Tex.Cr.App.1956), we stated the general rule regarding a trial judge's discretion to limit voir dire examination:

> The right of an accused to examine a prospective juror on voir-dire examination is unquestioned. As a general rule, great latitude should be allowed a party interrogating a venire in order to enable his counsel to determine, in an intelligent manner, the desirability of exercising his right of a peremptory challenge, *and is such a right as should not be unnecessarily limited.*

*McGowen,* 290 S.W.2d at 524.

We recognize that any proper question has the potential to lengthen the voir dire portion of the trial. However, it is improp-

---

**2.** We pause to note that, from the record before us, it appears the State's voir dire examination took approximately twice as long as appellant's voir dire examination.

**3.** Tex.Code Crim.Proc.Ann. art. 35.17(2) provides:

> In a capital felony case, in which the State seeks the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles as

applicable to the case on trial, of *reasonable doubt,* burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court.

er for a trial judge to impose restrictions based on the mere possibility that the otherwise proper question might lengthen the process. The trial judge must first allow the question, and may later curtail similar questions if the voir dire process proves to be unduly lengthy. *See Battie*, 551 S.W.2d at 403. Also, trial judges may prohibit an otherwise proper question which substantially repeats others posed by the same party, *Allridge v. State*, 762 S.W.2d 146, 167 (Tex.Cr.App.1988), or when the prospective juror has stated his position clearly, unequivocally, and without reservation. *Phillips v. State*, 701 S.W.2d 875, 889 (Tex.Cr.App.1985).

■ Additionally, the fact that no definition will be provided for a term does not render a prospective juror's understanding of that term irrelevant. To the contrary, that understanding becomes more crucial to the intelligent exercise of either the State's or the defendant's peremptory challenges because there is no definition to guide what could be a juror's skewed perception of the term.

■ Consequently, even though this Court had not adopted a definition pertaining to the State's burden of proof at the time of appellant's trial, we believe the parties were entitled to question the venire on that subject to determine how the jury would apply the State's burden of proof.[4] As previously noted, the State's voir dire examination thoroughly covered the burden of proof, initially by defining the burden in the negative ("Beyond a reasonable doubt does *not* mean beyond all doubt.") and later by equating it with being *"convinced"* of guilt. Although the prosecutor had previously discussed his definition of

reasonable doubt, defense counsel had not previously asked Myrick any questions pertaining to reasonable doubt nor had Myrick indicated her understanding of that term. The inquiry of Myrick was proper because it sought to discover her views on an issue applicable to appellant's trial, was not repetitious, and was not in an improper form. Therefore, we conclude the trial judge abused his discretion in restricting appellant's voir dire.

### III.

Finally, the State argues, in the event we find the trial judge abused his discretion, that we should overrule our holding in *Nunfio* and to develop another analysis of when a case should be reversed because of this type of error.[5]

■ We have consistently held that when a proper question is not allowed to be asked, the answer to the question need not be shown to establish harm. *Guerra*, 771 S.W.2d at 468. In *Nunfio* we unanimously held that this type of error was not subject to a harm analysis under Tex.R.App.Proc. 81(b)(2) and explained our rationale as follows:

The rationale behind our exclusion of this type error from a harm analysis is that the inquiry involved in addressing the issue incorporates an analysis akin to that required under 81(b)(2) and, consequently, addressing the error itself also answers the harm inquiry. That is, once a reviewing court decides that a disallowed question was proper, the inescapable fact is that disallowance of the question denied the defendant the ability to intelligently exercise his peremptory challenges. The harm lies in the denial

---

4. We have now determined that a definition of "reasonable doubt" must be given in any jury trial, *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), but this requirement is prospective only.

5. Specifically, the State invites us to re-evaluate *Nunfio* in light of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and affirm the

judgment of the Court of Appeals because the error did not prejudice counsel's ability to represent appellant. We note that this long-standing method, *see Naugle v. State*, 40 S.W.2d 92, 94 (Tex.Cr.App.1931), is based solely on the Texas Constitution. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Cr.App.1991). Therefore, *Strickland* and *Cronic* are not controlling.

of the ability to intelligently exercise one's peremptory strikes. To further require a reviewing court to undergo a harm analysis in accordance with Rule 81(b)(2) would be fruitless. As we pointed out in the case of *Roberts v. State*, 784 S.W.2d 430, 435 (Tex.Cr.App.1990), not all errors are such as to be meaningfully subject to a harm analysis. [footnote omitted] This is one error which requires reversal of the conviction without the necessity of an inquiry into harmfulness.

*Nunfio*, 808 S.W.2d at 485.

We believe our reasoning in *Nunfio* remains sound and, therefore, we decline the State's invitation to overrule that holding.

The judgments of the Court of Appeals and the trial court are reversed and the case is remanded to the trial court.

CAMPBELL, J., dissents, believing that the Court of Appeals correctly applied existing law to the facts of the case, in finding that the trial court did not abuse its discretion in denying appellant's request to question prospective jurors re the meaning of the term "reasonable doubt."
McCORMICK, P.J., and WHITE and BENAVIDES, JJ., join the note of CAMPBELL, J.