**Antonio Ray JONES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–347–CR.**

Court of Appeals of Texas,
Fort Worth.

March 17, 1993.

Discretionary Review Refused
June 16, 1993.

Hill, Beatty, Butcher & Gallagher, and Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Anne E. Swenson, Asst., and Robert K. Gill, Barbara Medley, Assts., Fort Worth, for appellee.

Before FARRIS and DAY, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

DAY, Justice.

In accordance with Tex.R.App.P. 101, a majority of the justices who participated in the original opinion and the opinion on appellant's petition for discretionary review in this case hereby withdraw our opinion and judgment, reconsider and modify the same, and substitute the following:

Antonio Ray Jones appeals his convictions of murder and aggravated robbery. Tex.Penal Code Ann. § 19.02(a) (Vernon 1989), § 29.03(a)(2) (Vernon Supp.1993).

The case was tried to a jury, which assessed punishment at ninety-nine years in the Texas Department of Criminal Justice, Institutional Division, for the murder conviction and sixty years for the aggravated robbery conviction.

We affirm the conviction for aggravated robbery and reverse the murder conviction.

In three questions for review, Jones complains the trial court improperly restricted his voir dire examination regarding a proper area of inquiry and that his murder conviction is invalid because exculpatory material in the State's possession was not made available to him.

We will limit our discussion of the facts to those addressed in each question for review.

■ In his second question for review, Jones complains the trial court improperly restricted his voir dire examination of prospective jurors regarding their understanding of the "static or variable nature of the threshold level of proof" required to satisfy the burden of proof beyond a reasonable doubt. In a criminal case the State must prove the allegations in the indictment beyond a reasonable doubt. The State's burden of proof is an issue applicable to any criminal case because the fact finder must apply that standard when determining guilt. *Woolridge v. State*, 827 S.W.2d 900, 904 (Tex.Crim.App.1992). Therefore, both parties have an interest in knowing a potential juror's common understanding of the State's burden of proof in order to determine how the jury will apply that burden. *Id.*

The Court of Criminal Appeals has provided a definition of "reasonable doubt" that must be given in every criminal trial. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991). *Geesa* applies prospectively only, however, and thus at the time of the trial of the instant case, no definition was available. Instead, the jurors were free to define "reasonable doubt" individually. Accordingly, the Court of Criminal Appeals has held that the parties in cases to which *Geesa* does not apply are entitled to question the venire on the State's burden of proof to determine how the jury would apply that burden. *Woolridge*, 827 S.W.2d at 906.

■ The standard of review applicable to complaints of improper restriction of voir dire is abuse of discretion. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991). A trial court abuses its discretion if it refuses to allow the defendant to voir dire prospective jurors about what they think reasonable doubt means. *Lane v. State*, 828 S.W.2d 764, 766 (Tex.Crim.App. 1992). Jones contends that the trial court in the instant case abused its discretion in this manner.

■ Specifically, Jones complains that the trial court improperly sustained the State's objections to the following voir dire examination:

> [DEFENSE COUNSEL]: As you are well aware now, this case involves an allegation of murder. And as Mr. Gill pointed out to you, murder is punishable by not less than five nor more than ninety-nine years or life. *Do you all appreciate, do you all understand that in determining the threshold level of reasonable doubt, the severity of the sentence might be a consideration? I'm not saying it is. I am just saying that it might be. In other words, what satisfies an individual as proof beyond a reasonable doubt—* [1]
>
> [PROSECUTOR]: I will have to object to this line of questioning. The standard of beyond a reasonable doubt is the same, no matter what kind of case we are talking about.
>
> THE COURT: Your objection is sustained.
>
> [DEFENSE COUNSEL]: Beyond a reasonable doubt—Your Honor, I was asking that question for the sole purpose of the intelligent use of my peremptory challenges.
>
> THE COURT: Restate the question.
>
> [DEFENSE COUNSEL]: *The question sought to test the jurors' understanding that the term "beyond a reasonable*

---

1. Unless otherwise indicated, all emphasis herein is supplied by the author.

doubt," the threshold level of reasonable doubt[,] might vary with the circumstances. And the circumstances include different types of cases. In other words, the severity of the punishment might be a consideration, the thought being that they would give— they would have a higher threshold for a case in which punishment is five to ninety-nine, as opposed to a theft case, where it's a hundred eighty days in the county jail.

THE COURT: The objection is sustained.

Jones contends that defense counsel's proposed line of questioning is almost identical to that approved in the recent *Woolridge* decision. In *Woolridge*, however, defense counsel asked potential jurors, on an individual basis, "May I ask you what beyond a reasonable doubt means to you?" 827 S.W.2d at 903. Defense counsel also gave a definition of reasonable doubt adopted by federal judges and again asked, "Is that close to what you believe beyond a reasonable doubt means?" *Id.*

We find defense counsel's voir dire examination in this case clearly distinguishable from that in *Woolridge*. Jones' defense counsel was not prevented from questioning potential jurors on their views about reasonable doubt. Rather, defense counsel suggested to the venire that they might vary their threshold requirement of proof depending on the nature of the case or the possible punishment. We know of no rule that would permit the defendant to suggest to the venire that the State's burden of proof would vary from case to case. *See Preston v. State*, 829 S.W.2d 928, 930 (Tex. App.—Fort Worth 1992, pet. ref'd).

Jones must show that the question sought to be asked was a proper one in order to establish an abuse of discretion by the trial court. *Harkey v. State*, 785 S.W.2d 876, 878 (Tex.App.—Austin 1990, no pet.). A question is proper if it seeks to *discover* the views of venire members on an issue applicable to the case, *e.g.*, the State's burden of proof. *Id.*

It may be that individual jurors would require different levels of proof in order to be convinced beyond a reasonable doubt that the defendant committed the offense charged. In light of *Woolridge*, Jones was entitled to ask venire members what amount of proof they would require. Nonetheless, we believe defense counsel was, by the particular phraseology of the voir dire examination set out above, attempting to suggest to the venire that they could require more proof in some cases than in others, depending on the seriousness of the charges or the possible punishment. An attempt to *question* a potential juror about whether he would require a higher threshold of proof and an attempt to *suggest* that he may require a higher threshold of proof are two different things altogether. While the questioning is proper, the suggesting is not. Accordingly, we find that the trial court did not abuse its discretion in restricting Jones' voir dire of potential jurors.

Jones also relies upon *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and the Court of Criminal Appeals' recent opinion in *Garrett v. State*, 851 S.W.2d 853 (Tex.Crim.App.1993). Both of these cases address challenges for cause, not peremptory challenges. In *Adams* the Supreme Court ruled that prospective jurors in a capital murder case cannot be excluded for cause merely because they "frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt." 448 U.S. at 50, 100 S.Ct. at 2529, 65 L.Ed.2d at 593. In *Garrett*, our Court of Criminal Appeals held that a potential juror may not be excluded for cause merely because he would set his threshold of reasonable doubt higher than the minimum required to sustain a jury verdict.

Notably, the courts in these cases did not hold that defense counsel or the State can suggest to venire members that, depending on the seriousness of the case, they might be able to require different levels of proof to find the defendant guilty beyond a reasonable doubt. *Adams* and *Garrett* are not inconsistent with our holding in the

instant case because Jones was not prevented from asking venire members whether their deliberations would be affected by the seriousness of the possible punishment. Instead, the trial court merely refused to allow Jones to suggest to potential jurors that they could require a different quantum of proof depending on the nature of the case. As we have previously stated in this opinion, questioning and suggesting are two entirely different things.

Because we find the trial court did not abuse its discretion in restricting Jones' voir dire regarding prospective jurors' understanding of reasonable doubt, we overrule Jones' second question for review.

In his third question for review, Jones complains that his murder conviction is invalid because the State failed to provide Jones exculpatory, material information contained in a Victim Impact Statement in the State's possession until after trial. Jones contends that the trial court improperly refused to grant his timely motion for new trial based on the State's failure to supply him that information, as required by *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) and the trial court's own order. Jones asserts that, had this information been presented to the jury, the jury would likely have returned a verdict of involuntary manslaughter rather than murder.

■ Absent a clear abuse of discretion, we will not disturb the trial court's denial of Jones' motion for new trial. *Todd v. State,* 601 S.W.2d 718, 720–21 (Tex.Crim. App. [Panel Op.] 1980).

The pertinent facts are as follows: Jones was indicted and convicted for the aggravated robbery and murder of Amir Mazaheri at Amir's convenience store. Jones testified at trial and admitted to both the shooting and the robbery.

Carmen Mazaheri, Amir's wife, was the only trial witness besides Jones who provided direct evidence of the events surrounding Amir's death. She testified that a gunman came into the store and pointed a handgun at her and her husband. She said she instinctively reached out and pushed the gun to one side with her left hand.

Carmen further testified that Amir then gave money to the gunman, after which the robber shouted an expletive, pointed the gun directly at Amir, and shot him.

Two men testified they were drinking beer across the street from the Mazaheris' convenience store on the morning of the shooting when Jones walked up to them and told one of them to leave because there was "fixing to be some popping" or "capping." One of these men testified that, by this statement, Jones meant he was going to shoot or kill somebody. On cross-examination, both men admitted to several prior convictions for theft and/or burglary.

In contrast, Jones testified that the gun had been pointed at both Carmen and Amir and, at the time of the shooting, was actually directed toward Carmen. Jones also testified that the gun discharged when Carmen pushed the gun aside, causing Jones to "jerk back" and pull the trigger.

Jones thereby contended that Amir's death resulted from Jones' reckless conduct of committing the robbery and pointing the gun at Amir, rather than from Jones' intentional act. Accordingly, Jones conceded that he was guilty of involuntary manslaughter but contested the murder charge. The State maintained that Jones intentionally shot Amir and was thus guilty of murder.

In a pretrial motion for discovery, Jones requested all possible evidence that would support his involuntary manslaughter position, including, but not limited to, any exculpatory material contained in any Victim Impact Statement. The court granted this portion of the motion for discovery. A few days after the alleged offense, Carmen Mazaheri completed a Victim Impact Statement, in which she described the shooting as an "accident." Due to an oversight by the State, the State failed to provide this statement to Jones until the day following the end of the trial.

Once the State provided the Victim Impact Statement to Jones, he timely filed a motion for new trial. A copy of the statement was introduced, without objection, at the motion for new trial hearing. At the

hearing, Carmen testified that she was a native of Peru and that Spanish was her first language. She further testified that she used the term "accident" in the Spanish sense, thereby seeking to convey only the thought that an event had occurred. Carmen also testified that, because she used "accident" in the Spanish sense, her Victim Impact Statement was not inconsistent with her trial testimony that Jones had deliberately killed Amir.

■ A defendant's due process right to a fair trial is violated when the State withholds evidence that is both favorable to the accused and material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218; *Medina v. State*, 743 S.W.2d 950, 957 (Tex.App.—Fort Worth 1988, pet. ref'd). Implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379, 87 L.Ed. 2d. 481 (1985); *Ex parte Adams*, 768 S.W.2d 281, 289 (Tex.Crim.App.1989).

■ Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.; Adams*, 768 S.W.2d at 290; *see also Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App.1992). The defendant bears the burden of showing materiality. *Amos v. State*, 819 S.W.2d 156, 159–60 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1959, 118 L.Ed.2d 561 (1992). In determining materiality, we are to evaluate the undisclosed evidence in the context of the entire record. *Turpin v. State*, 606 S.W.2d 907, 916 (Tex. Crim.App.1980).

■ Applying these standards to the instant case, we find that the trial court abused its discretion in denying Jones' motion for new trial. As the facts recited above indicate, the only direct evidence that Jones intentionally shot Amir came from Carmen herself. Conversely, Jones testified that the shooting was accidental, precipitated by Carmen's act of pushing the gun aside, thereby causing Jones to "jerk back" and pull the trigger.

Jones also presented physical evidence at trial that he claimed was consistent with his position. This evidence included a tape recording of Detectives Kratz and Pendergraft's post-arrest interview with Jones. The recording, which was introduced into evidence and played for the jury, shows that Officer Kratz spoke of the "big difference between intentionally killing somebody and somebody slapping your hand and a gun going off." Officer Kratz referred to someone slapping Jones' hand at least five times during the interview. Officer Pendergraft also stated "I know the lady slapped your hand."

Jones consistently denied any participation in the crime, both before and during this portion of the interview. Accordingly, Jones asserts the only other person who could have supplied the detectives this information was Carmen, since she was the only witness to the shooting besides Jones. Moreover, when Jones finally confessed to the shooting and robbery, he claimed that Carmen hit the gun and it went off. Jones consistently maintained the accidental nature of the shooting throughout trial.

Clearly, Carmen's Victim Impact Statement was favorable to Jones, in light of his position that the shooting was accidental. Additionally, viewed in the context of the entire record, including the other witnesses' testimony and the motion for new trial hearing, we find the trial court abused its discretion in finding that the Victim Impact Statement was not material to Jones' guilt or punishment. Even considering the testimony about "popping" or "capping" and Carmen's explanation of the meaning she attached to the word "accident," the Victim Impact Statement contained information sufficient to undermine confidence in the outcome of the trial. We cannot say with confidence that, had defense counsel been afforded the opportunity to cross-examine Carmen regarding the contents of the Vic-

tim Impact Statement at trial, the jury would nevertheless have returned a verdict finding Jones guilty of murder rather than involuntary manslaughter.

Because we find the trial court abused its discretion in denying Jones' motion for new trial, we sustain his third question for review. In light of our holding with regard to this question of review, we deem it unnecessary to address Jones' first question for review.

The trial court's judgment of conviction for the offense of aggravated robbery is affirmed. The judgment of conviction for murder is reversed, and that portion of the cause is remanded for a new trial.