**Enrique ESTRADA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04-97-00479-CR.

Court of Appeals of Texas, San Antonio.

June 30, 1999.

402

John Paul Young, San Antonio, for appellant.

Kevin P. Yeary, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice TOM RICKHOFF, Justice ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

Appellant, Enrique Estrada, Jr., was indicted and convicted of two counts of indecency with a child, specifically his fourteen year-old daughter. He was sentenced to ten years confinement in the Texas Department of Criminal Justice, Institutional Division, with sentences to run concurrently. Appellant raises two issues on appeal. First, he contends that the trial court erred in admitting his statement made to military police in violation of Article 38.23 of the Texas Code of Criminal Procedure. Second, he asserts the trial court erred in denying him the right to ask an appropriate question of the jury panel venire. We affirm.

### Statement of Relevant Facts

Appellant is a sergeant with the U.S. Army based at Fort Sam Houston in San Antonio, Texas. On March 8, 1995, Child Protective Services ("CPS") received an allegation of sexual abuse concerning appellant's daughter. The child, M.E., alleged that her father had been responsible for the assault. Pursuant to this allegation, CPS informed Family Advocacy and the U.S. Criminal Investigations Command ("CID") on the Fort Sam Houston base. Appellant was informed by superiors that he was to move into the barracks pending an investigation of the allegations against him. Appellant moved into the barracks on the evening of March 8, 1995.

Appellant went to work as a ward supervisor at the base hospital the next day. While at work, he was informed by his commanding officer that he was to meet with representatives from CPS and Family Advocacy concerning the charges against him. Around 1:30 p.m., appellant walked from his work to the meeting, and later returned to work. He did this unaccompanied. His commanding officer had also informed him that he was to meet with a CID agent later that day to discuss the allegations. Master Sergeant Mathius Kraus, special agent with CID, interviewed appellant at his office sometime in the early evening. Kraus had previously notified appellant's commanding officer that he wished to speak to him.

Pursuant to a motion to suppress his statement made to Kraus, appellant testified at an evidentiary hearing. Appellant testified that he was escorted by another sergeant to his meeting with Kraus. During their walk to the CID office, appellant voiced the fact that he needed to speak with his attorney. Upon reaching the CID office, appellant met with Kraus. Kraus also testified at the hearing. According to him, the two men met in his office. Kraus offered appellant something to drink, use of the vending machines and the opportunity to use the latrine. He stated that he asked appellant for his military identification which appellant dutifully relinquished. After some discussion of their backgrounds, Kraus stated that he informed appellant of the allegations against him and read him his rights pursuant to the Department of Army Form 3187. While there was conflicting evidence as to whether appellant was read his rights the minute he entered Kraus's office, appellant indicated he was made aware of his rights prior to discussing the allegations of sexual abuse against him. Pursuant to form instructions, Kraus informed appellant of his right to not answer questions, that what he

said could be used against him in a criminal trial, and that as military personnel, he had the right to have a lawyer with him during questioning. He was also informed that he had the right to stop the questioning at any time and speak privately with a lawyer. This last right was effective even if he signed a waiver of rights form.

It was uncontroverted that appellant was read his rights, understood those rights, and then waived those rights. Appellant signed the form indicating his waiver. Additionally, Kraus questioned appellant as to whether he had been advised of his rights within the last five years. This question was also noted on the form to which appellant responded in the negative. Appellant also initialed his response.

Appellant testified that Kraus questioned him concerning the allegations of sexual abuse. Appellant stated that he denied all of the acts. He stated that at one point, Kraus left the room for approximately thirty minutes. Upon his return, he stated that he did not believe appellant. Appellant testified that Kraus told him that he could go home if he would just tell Kraus what he wanted to hear. Thereafter, appellant confessed to touching his daughter's breast and vaginal area and forcing her to touch his erect penis. He testified that he confessed only because he wanted to go home. Contrastingly, Kraus testified that appellant denied any involvement for the first two-thirds of the interview. He stated that he left the room one time for about five minutes. Kraus denied making any promises of release or inducing appellant to admit to the allegations. He testified that appellant confessed to the allegations once he told him that he did not believe his denials.

Appellant's statement was reduced to writing. Both Kraus and appellant testified that appellant was given the opportunity to review the statement and make any

changes. While he testified that he only glanced at the statement, appellant made one spelling change and initialed the change. He subsequently signed the statement. Kraus testified that while he had not asked appellant if he had an attorney, appellant never mentioned the need for or requested an attorney. Appellant also testified that at no time was he asked if he wished to have an attorney present.

Thereafter, appellant's photo and fingerprints were taken. He was subsequently escorted by Kraus across the street to the military police building where Kraus gave appellant's identification to the desk sergeant. Appellant was not placed in a cell, but was left at the front desk. It is unclear from the record where appellant went after he was escorted by Kraus to the military police headquarters. On March 10, 1995, the next day, appellant was relieved of duty as a ward supervisor at the hospital.

After hearing the relevant testimony, the trial court denied appellant's motion to suppress. It entered its findings into the record by stating that appellant was not in custody notwithstanding the fact that he was ordered to stay in the barracks, and escorted to and from his interview. It further held, that even if appellant was in custody, Kraus substantially complied with the requirements of article 38.22 of the Texas Code of Criminal Procedure by reading appellant his rights pursuant to the Department of Army Rights Form. Furthermore, it found that appellant never requested an attorney or stopped the interview despite maintaining the right and having the opportunity to do so.

### Suppression of Statement

 Appellant contends that the trial judge in the present case used the wrong standard in determining whether his statement was admissible.[1] That is, he argues

---

1. We note that in framing his first issue, appellant raised multiple issues which address the standard used by the trial court and whether the trial court correctly determined

that appellant's statement was voluntary. Where an appellant raises multifarious issues, he is deemed to have waived those issues. *See County v. State,* 812 S.W.2d 303, 308

that the trial court improperly relied upon Texas law in evaluating whether appellant's statement was voluntarily obtained rather than U.S. military law or authority. Appellant cites the Military Code of Evidence and Article 31(b) of the Uniform Code as the law which the trial court was obligated to take into account pursuant to Article 38.23 of the Texas Code of Criminal Procedure.[2] The State contends that the Military Rules of Evidence are not "laws" as contemplated by article 38.23, but are rules of admissibility in military courts. As such, they are precluded from consideration in the gathering of evidence in general. In addition, the State argues that full compliance was made with article 31(b) which requires that an individual be informed of his rights prior to giving a statement. The first issue which we address is whether the trial court applied the correct law.

■ Appellant cites the Military Rules of Evidence and asserts that these rules provide that if a person interrogating a suspect "knows or reasonably should know that counsel either has been appointed or retained by the accused or suspect with respect to that offense, counsel must be notified of the intended interrogation and given reasonable time in which to attend before the interrogation may proceed." We are confronted with an initial problem regarding the authority cited by appellant. Our review of the rule cited by appellant as authority does not contain the passage quoted. In addition, we are unable to find the rule in any of the Rules of Military Evidence. This, however, is not a concern relevant to the case presented before us today. We refuse to decide whether the Military Rules of Evidence as contained in the Manual for Court–Martial, carry the

force and effect of law as encompassed by article 38.23. We need not make this decision in light of the facts presented in the record.

Assuming that the Military Rules of Evidence were in fact applicable to the case at hand, and assuming that they provide that a person cannot be questioned absent notification of counsel, there is nothing to suggest that Kraus violated the rules. For the rule espoused by appellant to have been violated, Kraus would have either needed to know or should have known that appellant had retained counsel at the time he was interviewed. While Kraus never expressly asked appellant whether he had counsel, he did warn appellant of his right to counsel. Appellant indicated he understood his rights, however, he never asserted his request for counsel. Absent a request by appellant, Kraus could not have known that appellant had retained counsel. Appellant's complaint is, therefore, without merit.

■ In his motion to suppress, appellant contended that the statement taken by Kraus was in violation of article 38.22 of the Texas Code of Criminal Procedure and article 31(b) of the Uniform Code of Military Justice. Article 31 provides that

no person subject to the uniform code, may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him at trial.

(Tex.Crim.App.1989). However, because appellant's issues involve the taking of his statement and admission of such statement into evidence we address the issues raised.

**2.** Article 38.23 provides the following:
No evidence obtained by an officer or other person in violation of any provisions of the

Constitution or law of the State of Texas or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
Tex.Code of Crim. Proc. Ann. art. 38.23 (Vernon 1979 & Supp.1999).

*See* 10 U.S.C.A. § 831, art. 31(b) (West 1998). While article 31(b) does not mirror our article 38.22, § 2, the intent of the article is similar in that both provide that an individual be warned of his or her rights when subject to custodial interrogation. Based on the facts indicated above, appellant was warned of (1) the accusations against him; (2) that he did not have to make a statement; and (3) that any statement could be used against him in full compliance with article 31(b). Furthermore, the warnings given by Kraus were fully equivalent to his rights outlined under article 38.22, § 2(a). *See* TEX.CODE OF CRIM. PROC. ANN. art. 38.22 § 2(c) (Vernon 1979).[3]

■ Finally, we determine whether appellant's statement was involuntarily obtained through force or coercion. The standard of review regarding the voluntariness of a confession is a deferential review of the trial court's determination of the historical facts and a *de novo* review of the law's application to those facts. *See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997) (applying the same standard to a denial of a motion to suppress evidence); *Henderson v. State,* 962 S.W.2d 544, 564 (Tex.Crim.App.1997) (applying same standard to a denial of a motion to suppress defendant's statement).

Appellant contends that the taking of his military card, the series of locked doors, his fatigue and Kraus's promises invalidated the voluntariness of his statement. Kraus testified that he made no promises to appellant, nor did he ever inform appellant that he was not free to leave. Finally, while appellant indicated that he had not slept well the night before, there is nothing in the record to support that he communicated his fatigue to Kraus. Accord-ingly, we hold that appellant's statement was voluntary and that it was not a product of coercion or promise. Appellant's first issue is overruled.

### Jury Selection

■ Appellant next contends that he was denied the right to ask an appropriate question on jury voir dire. Appellant was permitted to ask the panel whether, if there was some evidence of guilt but no evidence showing guilt beyond a reasonable doubt, could they acquit him. However, he was denied the opportunity to ask the venire persons whether they would change their answers to that question if they realized that defendant could go back to his family after such an acquittal. The trial court denied the second question as improper.

■ We review a trial court's limitation of jury voir dire by an abuse of discretion standard. *Howard v. State,* 941 S.W.2d 102, 108 (Tex.Crim.App.1996). We recognize that the trial court has not only a right, but a duty to impose reasonable limitations on voir dire. *Cantu v. State,* 842 S.W.2d 667, 668 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). However, refusing to allow a defendant to ask a proper question will constitute reversible error. *Woolridge v. State,* 827 S.W.2d 900, 904 (Tex.Crim.App.1992).

■ A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *See Smith v. State,* 703 S.W.2d 641 (Tex.Crim.App.1985); *Woolridge,* 827 S.W.2d at 904. A trial judge may limit a defendant's voir dire under specific circumstances where (1) a question commits a venire person to a specific set of facts; (2) the questions are

---

3. We note that any application of article 38.22 would have necessitated a finding of the trial court that he was in custody. In the present case, the trial court entered its finding that appellant was not in custody despite being ordered to move into base barracks and es-corted to and from his interview with Kraus. We need not determine the issue of custody because, even assuming appellant was in custody, Kraus made appellant aware of his rights prior to questioning in accordance with article 38.22, § 2(a).

duplicitous or repetitious; (3) the venire person has already stated his or her position clearly and unequivocally; and (4) where the questions are not in proper form. *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

Appellant's first question asked,

If after reviewing all the evidence and the law in a child sexual molestation case you reached the conclusion that there was some evidence of crime, but that the evidence did not reach the level of beyond a reasonable doubt could you acquit the defendant?

Appellant's second question asked the jury, "Would it change your mind in the last question if you realized that defendant could go back to his family after such an acquittal?" In a hearing outside the presence of the jury, the trial court denied appellant's question on the basis that it was getting into the facts of the case without the jury having heard the evidence. Appellant responded the question was proper because of the strong possibility that appellant would return home if a verdict of not guilty was reached. In other words, appellant's purpose in offering the question was to determine the specific emotional sensitivity a child abuse case generates. The State argues that the question was improper because it was presented to ascertain the jury venire's views on an applicable issue in the case, and was based on a peculiar set of facts. We agree with the State.

First, we consider whether a jury venire's assessment of whether appellant could go back home is an issue inapplicable to the case. Whether appellant could or would return home should he be acquitted is not an issue for the jury to consider because it takes into account matters after the fact. *Cf. Rhoades v. State*, 934 S.W.2d 113, 118–19 (Tex.Crim.App.1996) (holding that venire question concerning the minimum calendar years which defendant would have to serve before parole was not

an issue before the jury). Here, appellant's first question clearly involved the burden of proof which the State would have to meet. However, his second question would have had the venire take into account the possibility of his return to the home of the victim. We find this analogous to *Rhoades*, where the appellant's question would have had the jury consider the possibility of parole after a conviction. *Rhoades*, 934 S.W.2d at 118.

Second, appellant's question would have committed the jury to a specific set of facts. *See White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *Coleman v. State*, 881 S.W.2d 344, 350–51 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995). That is, the jury would have been made aware that appellant was on trial for allegedly sexually abusing his daughter with whom he lived. Moreover, the jury would have considered that if he was acquitted, he would have returned home to live with his daughter. We find such a question was improper. Accordingly, we overrule appellant's second issue.

### Conclusion

For the reasons stated above, we overrule appellant's two issues and affirm the judgment of the trial court.