Christopher BARRETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–95–00153–CR.

Court of Appeals of Texas,
Tyler.

Dec. 28, 1995.

William M. House, for appellant.

David Sorrell, for appellee.

RAMEY, Chief Justice.

In a trial to the court, Appellant was convicted of the offense of delivery of a controlled substance, namely cocaine, and was sentenced to 60 years imprisonment. On appeal, Appellant raises one point of error. We will **affirm.**

By his sole point of error, Appellant alleges that at the punishment phase of trial, the court erred in admitting evidence of extraneous crimes or bad acts that were not shown to have been committed by Appellant beyond a reasonable doubt. Appellant alleg-

es that the admission of this evidence violated Tᴇx.Cᴏᴅᴇ Cʀɪᴍ.Pʀᴏᴄ.Aɴɴ. art. 37.07(3)(a) (Vernon Supp.1993) which provides in relevant part:[1]

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or **bad act** that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. (Emphasis added).

Tᴇx.Cᴏᴅᴇ Cʀɪᴍ.Pʀᴏᴄ.Aɴɴ. art. 37.07(3)(a) (Vernon Supp.1993).

Prior to trial, the State notified Appellant that it intended to introduce evidence of the following five extraneous offenses committed by Appellant while he was free on bond for the instant offense: (1) his October 24, 1994 arrest for possession of a controlled substance; (2) his December 30, 1994 arrest for evading detention; (3) his August 20, 1994 arrest for possession of a controlled substance; (4) his December 13, 1993 arrest for D.W.I.; and (5) his June 30, 1994 arrest for fleeing.

Thereafter, at the punishment phase of trial, the State only introduced evidence of the October 1994 and December 1994 offenses. That evidence is as follows.

At the beginning of the punishment phase, the State called Officer Chad Sparkman, a deputy with the Anderson County Sheriff's Office, who began by testifying that on the night of October 17, 1994, he, another officer, and a cooperating individual named Ricky Willard who had purchased a controlled substance from Appellant, went to 320 Variah Street. At this point, Appellant's trial counsel lodged the following objection:

> APPELLANT'S COUNSEL: Your Honor, we'll object to any further testimony concerning any controlled substance unless the State gives me its assurance that it's prepared to prove that it was, in fact, analyzed and is a controlled substances. [sic]
>
> STATE'S ATTORNEY: Judge, at this point, as far as controlled substance is concerned, our intent, at this point, is not to offer evidence of the purchase or delivery of a controlled substance. Simply, under 3707 this is a bad act that we feel we can offer for purposes of punishment and the fact that Mr. Barrett at this time attempted to sell or tried to sell a substance that he was calling cocaine, we would feel is a bad act, whether or not it's proven up that it was cocaine at that time or not ... We're not trying to prove up the delivery of cocaine. We're simply trying to prove up the bad act under 3707. Mr. Barrett, in his statement, basically, on the PSI, has indicated he has never been involved with drugs, never used any drugs or anything like that. We feel that is relevant, that the Court certainly can determine it's relevant to use at this time. What we intend to present to the Court is the fact that on this date Officers Sparkman and Mannix sent a CI in. We have the CI here and at that time, that he purchased what was alleged to be cocaine at that point.... We don't feel it's necessary to go through all the use of the chain of custody and everything,

---

1. Prior to September 1, 1993, evidence of unadjudicated extraneous offenses was not admissible during the punishment phase of trials for non-capital offenses. *Grunsfeld v. State,* 843 S.W.2d 521, 526 (Tex.Cr.App.1992). However, on September 1, 1993, the Texas Legislature amended Article 37.07 to allow admission of unadjudicated extraneous offenses at the punishment trial of non-capital offenses. Tᴇx.Cᴏᴅᴇ Cʀɪᴍ.Pʀᴏᴄ.Aɴɴ. art. 37.07, § 3(a) (Vernon Supp.1995). This amendment to Article 37.07 applies only to trials for offenses committed on or after September 1, 1993. *Voisine v. State,* 889 S.W.2d 371, 372 (Tex.App.—Houston [14th Dist.] 1994, no writ). Since Appellant committed the offense in the instant case on October 29, 1993, the 1993 amendment to Article 37.07 is applicable to this case.

taking the Court's time in order to do that. We're simply showing this as a bad act.

In response, Appellant's counsel then stated that he understood Rule 37.07, and that he just wanted it noted for the record that he expected the State to prove these bad acts beyond a reasonable doubt. He further stated that if a jury were present, it would have to find that the bad act had been committed beyond a reasonable doubt before the bad act could be considered at all. The trial court then overruled Appellant's objection.

Sparkman then testified that on the night of October 17, 1994, he and officer Mannix met a confidential informant in the cemetery. They then searched the informant, placed a body mike on him, and gave him 20 dollars in impressed funds. The informant then went into 320 Variah Street and returned approximately two minutes later with a controlled substance. Sparkman stated that on October 20, 1994, they repeated this sequence of events again. The State then called Ricky Willard who testified that he was the confidential informant who went into 320 Variah Street on October 17th and 20th of 1994. Willard testified that Appellant was the person who lived at that address and that on those dates, he went into the house and asked Appellant if he had a "20," meaning a $20 rock of cocaine. In response, Appellant went into his bedroom and returned with something that Willard assumed was cocaine.

The State next called Lieutenant Jerry Powell, of the Texas Department of Public Safety Narcotics Service, who was assigned to Palestine, Texas. Powell testified that he had been with the DIU for 25 years. On December 30, 1994, he ran a search warrant on 320 Variah in Palestine, Texas. Powell stated that earlier that same day he had given a particular $20 bill to a confidential informant, and at the time he ran the search warrant on the residence at 320 Variah, he located that particular $20 bill in Appellant's wallet. The State then called Jeffrey Powell, who was employed by the Palestine Police Department. Jeffrey Powell testified that on December 30, 1994, he was called to 320 Variah Street to aid in the execution of a search warrant. As he watched the back of the residence, Jeffrey Powell observed Appellant running from the residence toward a wooded area. He also saw Appellant toss a white bottle into the woods. Jeffrey Powell and Officer Long then caught Appellant, placed him on the ground and handcuffed him. When they lifted Appellant, they discovered a small caliber pistol, which had apparently slipped from Appellant's waist band.

The State next called Officer Thomas Long of the Palestine Police Department. Long testified that he too was at 320 Variah Street on December 30, 1994. According to Long, Appellant ran from the side of the house, and Long called to him: "Police Officer. Stop." Appellant, however continued to run, and he threw what appeared to be a white pill bottle into the bushes. After handcuffing Appellant, Long retrieved the pill bottle and left the scene. Following Long's testimony, the State closed its case on punishment, and Appellant and his counsel made closing remarks. Thereafter, the court sentenced Appellant to 60 years' confinement.

■ TEX.CODE CRIM.PROC.ANN. art. 37.07(3)(a) requires that "bad acts" be proved beyond a reasonable doubt. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Cr.App.1991). This standard of review is also applicable to bench trials. *See Diaz v. State*, 902 S.W.2d 149 (Tex.App.—Houston [1st Dist.] 1995, no pet.). Before the "bad acts" alleged by the State can be relied upon by the trier of fact in the punishment phase, the trier of fact must first have found the evidence sufficient to establish that these bad acts occurred beyond a reasonable doubt. TEX.CODE CRIM.PROC.ANN. art. 37.07(3)(a) (Vernon Supp.1993).

Here, Appellant complains of the sufficiency of the evidence to support the bad acts introduced by the State at trial pertaining to Appellant's sale of what was purported to be crack cocaine on October 17 and 20, 1994.

With regard to the sale of the purported crack cocaine, the testimony of Officer Sparkman and of Willard, the confidential informant, provided ample evidence that on two occasions, upon Willard's request for a $20 rock of cocaine, Appellant delivered to Willard what he alleged was rock cocaine in exchange for $20 in marked bills. Furthermore, Willard testified that in order to support his own addiction, he had successfully purchased rock cocaine from Appellant on many occasions.

■ We believe that the evidence introduced at the punishment phase was sufficient beyond a reasonable doubt to support a finding that Appellant offered to sell Willard what was purported to be rock or crack cocaine. Since the State made it abundantly clear that it was not attempting to prove extraneous offenses regarding the sale of a controlled substance, but rather Appellant's bad acts in purporting to sell cocaine, it was not necessary for State to establish that the substance sold to Willard was actually a controlled substance. While we have found no case authorities on the issue, proof necessary to establish a "bad act" does not rise to that necessary to establish an extraneous offense. Accordingly, Appellant's sole point of error is overruled.

The judgment of the trial court is **affirmed.**